J-S12037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: N.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |

APPEAL OF: J.M., FATHER

No. 1834 MDA 2018

Appeal from the Order Entered October 9, 2018
In the Court of Common Pleas of Tioga County
Orphans' Court at No(s): 55-OC-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: L.M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M. | : | No. 1835 MDA 2018 |

Appeal from the Order Entered October 3, 2018
in the Court of Common Pleas of Tioga County
Orphans' Court at No(s): 56 OC 2018

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED APRIL 16, 2019**

J.M. ("Father") appeals from the respective Orders involuntarily terminating his parental rights to his biological sons, N.M. (born in February 2015), and L.M. (born in October 2012) (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b).[1]  We affirm the Orders.

_____

[1] On October 29, 2018, the trial court entered Orders that voluntarily terminated the parental rights of the Children's biological mother, B.S. ("Mother").  Mother is not a party to the instant appeals, nor has she filed appeals from the Orders.

On May 31, 2018, the Tioga County Department of Human Services, Office of Children and Youth ("OCY") filed Petitions seeking to involuntarily terminate Father's parental rights to the Children. On September 18, 2018, the trial court held an evidentiary hearing on the Petitions (hereinafter, the "termination hearing"). The following witnesses testified at the termination hearing:

- Matthew Moore ("Moore"), an Effective Safe Parenting ("ESP") caseworker, who regularly met with Father, discussed plans for substance abuse rehabilitation and counseling, and supervised some of Father's visits with the Children;

- Michelle Habbershaw ("Habbershaw"), the OCY caseworker for the family, who prepared a family service plan ("FSP") for Father, worked extensively with Father to achieve his FSP goals, and supervised some of Father's visits with the Children;

- Denise Feger, Ph.D. ("Dr. Feger"), who was qualified as an expert witness in the field of trauma and attachment in children, and performed an assessment of L.M. in April 2017 at the request of OCY;

- Jared Keltz ("Keltz"), a therapist who attends the Children's visits with Father and works on goals in L.M.'s treatment plan with L.M.;

- The Children's foster mother ("Foster Mother"), who has resided with the Children since June 2018, along with Foster Mother's husband (collectively, "Foster Parents")[2] and their three-year-old biological child;

- Father testified on his own behalf.

_____

[2] Foster Parents wish to adopt the Children, who refer to Foster Parents as "Mom" and "Dad."

In its Opinion, the trial court summarized the factual history of this case

as follows:

The [Children were] placed in the custody of [OCY in March 2017] …. A [FSP] was developed and reviewed with [Father]. The [FSP] addressed specific concerns leading to the removal of the [Children], including domestic violence, substance abuse and parenting [issues]. The objectives identified in the [FSP] were intended to address services and support efforts designed to support [Father]. During the pendency of the dependency case, [OCY] [] offered various services to [Father], including … []ESP[], a substance abuse[-]focused service for parents, Supporting Teaching Educating Parents (STEPS) parent education program, and the Fatherhood Program [(Fatherhood)]. [Father] has been court[-o]rdered to participate in drug and alcohol treatment services and testing[,] as well as a domestic violence program (MAAP).

* * *

The … [Children have] remained [in custody] since [March 2017], with the exception of an approximately two[-]week period when physical placement was with [] [M]other. At the time of removal, the [C]hildren were in the custody of Mother[,] and [Father] had occasional contact and visitation [(specifically, Father had twice-weekly supervised visits for two hours each)]. The concerns noted above, [*i.e.*,] the substance abuse, domestic violence and parenting concerns[,] applied to both Mother and [Father]. … [Father] failed to participate [in] or even be enrolled in [the court-ordered] domestic violence programs[,] and [he] acknowledged the same. [Father's] participation in substance abuse treatment has been, at best, minimal. [Father] has enrolled, attended one or two sessions, and then stopped attending. [Father] recently re-enrolled again. [Father] acknowledges [that] he continues to use illegal substances and declines to participate in random drug screening when asked. ([Father] has taken two dr[ug] tests at scheduled Permanency Review Hearings, but these are not random tests -- both were positive for controlled substances). [Father] has failed to participate in either the STEPS or Fatherhood Programs. [Father] accepts only ESP [s]ervices and does so selectively, rejecting, as noted, all requests for drug testing. His ESP caseworker[, Moore,] notes [that Father] has made minimal progress. [Father] has also

- 3 -

been less than cooperative with the family service caseworker, [Habbershaw]. … Habbershaw[] testified [that] she was unable to conduct a single home visit in 2017[,[3]] and had only been permitted into the home on one [] occasion during 2018[,] and then was excluded from certain areas of the house. [] Habbershaw further noted that her communication with [Father] was often met with "hostility," "threats," "name calling"[] and "profanity[."]

[At the time of the termination hearing, t]he [Children had] been in placement for nearly one [] year. [Father] has not participated in the medical or educational needs of the [Children]. These needs have been met by the [F]oster [P]arents. [Father] has engaged in and regularly attended visitation, but has not otherwise meaningfully contributed to the [Children's] needs.

Trial Court Opinion, 10/4/18, at 2-3.

At the termination hearing, the Children were represented by a guardian *ad litem* ("GAL"), who opined that it was in the Children's best interests that Father's parental rights be terminated. Jeffrey Yates, Esquire ("Attorney

_____

[3] Father resides with his paramour, C., her parents, and her son, in the home of C.'s parents.

- 4 -

Yates"), represented the Children as legal interests counsel,[4] and concurred with the recommendation of the GAL. Attorney Yates observed the Children interact with Foster Parents on two occasions at their home, and described the Children as being happy and well-bonded to Foster Parents. Attorney Yates also interviewed the Children. Attorney Yates stated that N.M., who was less than 3½ years old at the time of the termination hearing, was too young to express a preferred outcome in this matter.[5] Concerning L.M., who was approximately 5½ years old at the time of the termination hearing, Attorney Yates states in his appellate brief that "L.M. clearly and unequivocally stated on both occasions his preferred position[,] and that the best interest of L.M. is in remaining and becoming a part of the [F]oster [P]arent[s'] family through the termination of [Father's] parental rights." Brief for Attorney Yates at 7.

In early October 2018, the trial court entered the respective Orders involuntarily terminating Father's parental rights to the Children, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). Father timely filed Notices of appeal, along with Concise Statements of errors complained of on appeal

---

[4] *See In re Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017) (plurality) (holding that 23 Pa.C.S.A. § 2313(a) requires the appointment of counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding, and defining a child's legal interest as synonymous with his or her preferred outcome).

[5] *See In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018) (explaining that if the preferred outcome of the child is incapable of ascertainment because the child is very young, there can be no conflict between the child's legal interests and his or her best interests).

pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  This Court then consolidated the

appeals.

Father now presents the following issues for our review:

1. Did the trial court err and abuse its discretion in finding that [OCY] proved[,] by clear and convincing evidence[,] that the conditions which led to the removal or placement of the [C]hildren continue to exist and that [Father] cannot or will not remedy those conditions within a reasonable period of time?

2. Did the trial court err and abuse its discretion in finding that [OCY] proved[,] by clear and convincing evidence[,] that the termination of Father's parental rights was in the best interests of the [C]hildren due to the bond between Father and [the C]hildren?

Father's Brief at 7.  We will address Father's issues simultaneously.

Father argues that the trial court erred in terminating his parental rights

to the Children, where

(1) the primary issues that led to the placement or removal of the Children pertained to Mother;

(2) "Father did not always have a positive relationship with the caseworkers, but did engage in a number of the services offered by [OCY], including ESP and substance abuse counseling";

(3) there were no safety concerns with Father's residence;

(4) "Father's work schedule made it difficult for him to regularly attend counseling sessions at times";

(5) "Father has maintained regular contact with the [C]hildren through visitation and, by doing so, has deepened his bond with them"; and

(6) "Father has behaved appropriately and has provided adequate supervision for the [C]hildren while at the visits."

*Id.* at 14-15.  Additionally, Father contends that the trial court abused its

discretion when it ignored the evidence of the bond between Father and

Children and that "the [C]hildren may experience difficulty if that bond is severed." *Id.* at 16. Finally, Father emphasizes Moore's testimony that Father appeared to have a "close relationship" with the Children. *Id.* at 17.

We review an appeal from the termination of parental rights in accordance with the following standard:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re T.C.*, 984 A.2d 549, 551 (Pa. Super. 2009) (citation omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, "we will affirm[,] even

if the record could also support the opposite result." ***In re Adoption of T.B.B.***, 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of section 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant appeal, we will consider section 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent[,] by conduct continuing for a period of at least six months immediately preceding the filing of the petition[,] either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.--** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b); ***see also In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*) (stating that the focus in terminating

parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b)).

With respect to subsection 2511(a)(1), the Pennsylvania Supreme Court has stated that

> [o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B, N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

In determining that OCY had proved the requirements of subsection 2511(a)(1) by clear and convincing evidence, the trial court stated in its Opinion as follows:

- 9 -

> The record clearly establishes [that] the [Children have] been removed from the home for a period exceeding six (6) months. Further, the conditions leading to the removal, including a lack of parenting, [Father's] substance abuse[,] and unaddressed domestic violence, continue to exist and have not been addressed in a meaningful way. Additionally, the actions or inactions of [Father] make clear that it is unlikely these conditions will be addressed at any identifiable point in the future. Lastly, the [Children] currently [reside] with [F]oster [P]arents and [are] without the permanency to which [they are] entitled.

Trial Court Opinion, 10/3/18, at 3.

We determine that trial court's foregoing analysis and decision to terminate Father's parental rights under subsection 2511(a)(1) is supported by competent, clear and convincing evidence in the record. In particular, we emphasize the following testimony elicited at the termination hearing:

- At the time of the termination hearing, the Children had been in OCY care for eighteen months, and Father had been exercising supervised visits (for merely a total of four hours per week). N.T., 9/18/18, at 34-35.

- Father never progressed to semi-supervised or unsupervised visits, and he had not completed or started much of what the court had ordered him to do (particularly, maintaining, achieving, and proving sobriety and participating in *all* ordered services). *Id.* at 35, 55-56.

- Dr. Feger's testimony that, following her assessment of L.M. in April 2017, she determined that (1) L.M. had been exposed to multiple, traumatic incidents of domestic violence while in the care of Mother and Father, *id.* at 42; (2) L.M. was at risk for developing attachment issues in light of this trauma and his exposure to multiple caregivers, *id.* at 45; and (3) it is crucial that L.M. reside with a consistent, known caregiver to allow him the ability to attach and develop positively. *Id.* at 44-45.

- Dr. Feger's testimony that (1) she believed that L.M. would be able to adjust well, given his response to [F]oster [P]arents, *id.* at 44; and (2) since L.M. has only had supervised visitation

with Father for a few hours per week in an artificial setting, the loss of Father from L.M.'s life is less significant than L.M.'s need for permanency. ***Id.*** at 48.

- Habbershaw's testimony that (1) overall, Father has not been working on his FSP objectives, and he refused to even enroll in the recommended STEPS, MAAP and Fatherhood Programs, ***id.*** at 26-27; and (2) Father admits to illicit drug use, and each time he has come to court, he has tested positive for a controlled substance. ***Id.*** at 31-32.

- Moore's testimony that he has observed only minimal progress from Father, as Father has not undergone any drug screening, has not participated in recommended group drug and alcohol counseling, and has been in individual counseling for only a minimal amount of time. ***Id.*** at 10-11, 19-20.

Although Father should be commended for consistently attending visits with the Children and largely participating in ESP, he has exhibited a long history of failing to comply with his FSP, including participating in drug/alcohol counseling and **all** court-ordered services. ***See In re A.L.D.***, 797 A.2d 326, 337 (Pa. Super. 2002) (stating that a parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities). Father may not selectively pick and choose which services he desires to participate in.[6] The evidence is clear that the Children need and desire permanency; it would not be in their best interests for their lives to be placed on hold any longer. ***See In re Z.S.W.***, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of

_____

[6] Moreover, although Father avers that his work schedule prevented him from participating in some drug tests and ordered services, Father had an obligation to deal with such obstacles and utilize all available resources to preserve his parental relationship with the Children. ***See In re K.Z.S.***, ***supra***.

parenting."); *see also In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) (stating that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."). We, therefore, find no reason to disturb the trial court's conclusions or its discretion in terminating Father's parental rights to Children under subsection 2511(a)(1).

Next, in reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. … [T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations and internal quotation marks omitted). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

Furthermore, this Court has stated that

concluding [that] a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics[,] as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent …. Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Finally, it is also appropriate to consider a child's bond with their foster parents. *T.S.M.*, 71 A.3d at 268.

In its Opinion, the trial court stated as follows in determining that termination of Father's parental rights was in the Children's best interests under section 2511(b):

The needs of [the Children] are currently met by [] [F]oster [P]arents. [F]oster [P]arents have indicated they are willing to provide permanency to both siblings. Both siblings have adjusted to life in the foster home and have established a bond with [] [F]oster [P]arents, who they refer to as "mom" and "dad", and [the Children are also bonded to Foster Parents'] son. The [Children have] a continuing relationship with [Father] through visits and phone calls facilitated by [] [F]oster [P]arents. The evidence presented indicates [that Father] and each of the [C]hildren enjoy the visits and calls. It is clear there will be some difficulty if termination is granted[,] and the parental bond is severed. This difficulty[,] though[,] is likely to only be delayed, rather than prevented[,] by denying the requested relief. The evidence presented shows no meaningful progress by [Father] towards reunification[,] and there are no further actions [that OCY] or [the trial court] can take to facilitate reunification. Appropriate counseling and support by [Foster Parents] and [OCY] can address the impact of the severance of the bond between [Father] and [the Children]. The long[-]term needs and interest[s] of the [Children] will be serv[ed] by allowing [them] to establish permanency … as soon as possible.

Trial Court Opinion, 10/3/18, at 4.

Pursuant to section 2511(b), the trial court considered the Children's needs and welfare and the effect of termination of parental rights on the Children. The trial court appropriately found that Father has never met the Children's needs and welfare, and their safety needs while they have been removed and in care, and that Foster Parents meet those needs. Moreover, the trial court properly found that even though the Children have some bond with Father, their need for permanency with Foster Parents, an adoptive resource, outweighs the effects of severing that bond. *See In re T.D.*, 949 A.2d 910, 920-23 (Pa. Super. 2008) (affirming the termination of parental rights where "obvious emotional ties exist between [the child] and [p]arents, but [p]arents are either unwilling or unable to satisfy the irreducible minimum requirements of parenthood," and where preserving parental rights would only serve to prevent the child from being adopted and attaining permanency); *In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with biological mother would be contrary to child's best interests); *see also T.S.M.*, 71 A.3d at 271 (terminating parental rights despite evidence of a bond between biological mother and children, where mother could not parent children and instead hampered "children's ability to form attachments to foster families who could have provided the necessary love, care and stability that these children have so needed"); *In re L.M.*, 923 A.2d 505, 512 (Pa. Super. 2007) (stating that a parent's own feelings of love and affection for a child, alone,

will not preclude termination of parental rights). This Court "will not toll the well-being and permanency of [the Children] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007. Finally, even if the record arguably could also support an opposite result, because the trial court's findings under section 2511(b) are supported by competent, clear and convincing evidence in the record, we must affirm its decision. *See In re Adoption of T.B.B.*, *supra*.

Accordingly, since we discern no error and/or abuse of discretion in the trial court's Orders terminating Father's parental rights to the Children pursuant to section 2511(a)(1) and (b), we affirm the Orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/16/2019